UNTIED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JONATHAN AFANADOR, individually, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| KENNEBEC COUNTY, a municipality of the State of Maine, | ) ) ) |
| & | ) ) ) |
| NATHAN WILLHOITE, Corrections Officer at Kennebec County Correctional Facility, in his individual and official capacity. | ) ) ) ) ) ) |
| Defendants. | ) |

Civil No. _____

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, Jonathan Afanador, by and through undersigned counsel, and hereby complains against Defendants Kennebec County, including Kennebec County Sheriff's Office and Kennebec County Correctional Facility, and Corrections Officer Nathan Willhoite, as follows:

### INTRODUCTION

1. This is a civil rights case challenging the use of excessive force by Corrections Officer Nathan Willhoite ("Corrections Officer Willhoite") against Plaintiff Jonathan Afanador ("Afanador"), and the failure of Kennebec County and its subdivisions, Kennebec County Sheriff's Office ("KCSO") and Kennebec County Correctional Facilities ("KCCF"), to train and supervise Corrections Officer Willhoite.

### PARTIES

2. Plaintiff Jonathan Afanador ("Afanador") is currently an inmate at KCCF.

3. Defendant Kennebec County is a municipality of the state of Maine.

4. KCCF is a detention center located at 115 State Street, Augusta, ME 04330.  KCCF is operated by the KCSO and is a subdivision of Kennebec County.

5. KCSO is a subdivision of Kennebec County.

6. Corrections Officer Willhoite, sued in his official and individual capacity, was a correctional officer at KCCF at all times relevant to this Complaint.

## JURISDICTION

7. This action seeks to vindicate rights guaranteed by the Fourteenth Amendment of the United States Constitution, and it is brought pursuant to 42 U.S.C. § 1983.

8. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under federal law.  Jurisdiction is also authorized pursuant to 28 U.S.C. § 1343(a)(3).

9. Pursuant to 28 U.S.C. § 1367(a), this Court possesses supplemental jurisdiction over state law claims under the Maine Civil Rights Act, 5 M.R.S. §§ 4681-85, and the Maine Tort Claims Act, 14 M.R.S. §§ 8101-8118.

10. Venue in this Court is proper under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred within this judicial district and because the Defendants are subject to personal jurisdiction in this District.

## STATEMENT OF FACTS

11. Afanador is a black man.

12. Afanador was held as a pretrial detainee at KCCF at all times relevant to this Complaint.

13. On August 18, 2019, a "full floor shakedown" was being conducted on Afanador's block. Corrections Officer Willhoite and Corrections Officer Brunelle unlocked Afanador's cell and removed him. Corrections Officer Brunelle called Afanador a "nigger" before removing him from the cell and in front of Correction Officer Willhoite. This was not the first time Afanador experienced the use of racial slurs at KCCF.

14. Inmates, including Afanador, were sitting and/or standing outside of their respective cells during the shakedown. Afanador was standing against a wall and reading a book.

15. The inmates were ordered to sit. Corrections Officer Willhoite began walking toward Afanador, passing other inmates who were also standing, as he drew his can of oleoresin capsicum spray ("OC spray") from his duty belt. Corrections Officer Willhoite continued walking toward Afanador with his OC spray already in-hand as he confronted Afanador.

16. Despite the absence of any physical danger and the presence of multiple other corrections officers, Corrections Officer Willhoite grabbed Afanador's left arm and deployed his OC spray directly into Afanador's face. Corrections Officer Willhoite then spun Afanador around by his left arm and slammed Afanador's chest against the table while pinning his arm behind him.

17. Afanador was led away in handcuffs and placed in isolation.

18. Afanador was not immediately decontaminated and did not receive medical attention until the next day.

19. The assault on Afanador by Corrections Officer Willhoite was captured by KCCF video cameras.

20. Corrections Officer Willhoite was a known bad apple by Kennebec County, KCCF, and KCSO before he ever assaulted Afanador.

21. In particular, Kennebec County was put on notice that Corrections Officer Willhoite made racist and violent statements about and towards inmates as early as September 4, 2018.

22. In public court filings, Diedre Digiacomo, a former KCCF corrections officer, notified Kennebec County that Corrections Officer Willhoite stated while on duty at KCCF that "all black people look alike."

23. Kennebec County was also notified that Corrections Officer Willhoite stated about an inmate who attempted hanging himself that it "wouldn't have mattered if he died, he's an inmate."

24. Kennebec County was also notified that Corrections Officer Willhoite bragged about slamming an inmate into a wall.

25. Kennebec County was also notified that Corrections Officer Willhoite purposefully antagonized an inmate on another occasion by calling him names.

26. Kennebec County was also notified that Corrections Officer Willhoite had inappropriate conversations about hurting animals while at work.

27. Kennebec County was notified of all the issues in Paragraphs 22-26 before Corrections Officer Willhoite assaulted Afanador on August 18, 2019.

28. Kennebec County failed to take appropriate remedial action and fire Willhoite to avoid future instances of racist and violent behavior after receiving these warnings.

**FIRST CAUSE OF ACTION**
**Violation of 42 U.S.C. § 1983—Use of Excessive Force in Violation of the Fourteenth Amendment of the United States Constitution**
**(Corrections Officer Willhoite in his official and individual capacities)**

29. Plaintiff Jonathan Afanador reasserts and realleges the allegations in paragraphs 1-28.

30. Corrections Officer Willhoite, while acting under color of state law, deliberately, purposefully, and knowingly used excessive force against Afanador that was objectively unreasonable in violation of the Fourteenth Amendment of the United States Constitution and which amounted to pretrial punishment of Afanador.

31. Corrections Officer Willhoite maliciously and with forethought applied excessive force for the purpose of causing harm to Afanador.

32. The use of force deprived Afanador of his clearly established due process rights as guaranteed by the Fourteenth Amendment of the United States Constitution. *See, e.g., Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015); *Jennings v. Jones*, 499 F.3d 2, 16 (1st Cir. 2007).

33. Corrections Officer Willhoite's excessive use of force amounted to punishment and deprived Afanador of his rights under the 14th Amendment.

34. Corrections Officer Willhoite's excessive use of force was made with an express intent to harm and/or was excessive in relation to any purportedly legitimate reason for the use of force.

35. Corrections Officer Willhoite's use of excessive force caused harm to Afanador, including injuries to his eyes, pain and suffering, and other physical and emotional harm.

**SECOND CAUSE OF ACTION**
**Violation of 5 M.R.S. § 4682(1-A)—Excessive Force in Violation of Article I, Sections 1, 6, and 6-A of the Maine Constitution**
**(Officer Willhoite in his official and individual capacities)**

36. Plaintiff Jonathan Afanador reasserts and realleges the allegations in paragraphs 1-35.

37. Corrections Officer Willhoite subjected Afanador to excessive force in violation of the "safety" provision of Article I, Section 1, of the Maine Constitution, which protects Afanador's "inherent and unalienable right[]" to "safety."

38. Corrections Officer Willhoite subjected Afanador to excessive force in violation of Article I, Section 6, of the Maine Constitution, which protects the "[r]ights of persons accused" not to "be deprived of life, liberty, property or privileges," and in violation of Section 6-A, which protects the right to "due process."

39. Corrections Officer Willhoite's use of excessive force caused harm to Afanador, including injuries to his eyes, pain and suffering, and other physical and emotional harm.

### THIRD CAUSE OF ACTION
### Assault (Use of Excessive Force)
### (Officer Willhoite in his official and individual capacities)

40. Plaintiff Jonathan Afanador reasserts and realleges the allegations in paragraphs 1-39.

41. Corrections Officer Willhoite caused offensive physical contact to Afanador when he used the OC spray without provocation, slammed Afanador's chest to the table, and twisted his arm behind his back.

42. Corrections Officer Willhoite's use of excessive force amounted to assault and punishment

43. Corrections Officer Willhoite's use of excessive force exceeded his discretion in performing his official government duties.

44. Corrections Officer Willhoite's use of excessive force caused harm to Afanador, including injuries to his eyes, pain and suffering, and other physical and emotional harm.

### FOURTH CAUSE OF ACTION
### Failure to Train/Supervise Corrections Officer Willhoite—42 U.S.C. § 1983
### (Kennebec County)

45. Plaintiff Jonathan Afanador reasserts and realleges the allegations in paragraphs 1-44.

46. At all times relevant to this Complaint, Afanador had a Constitutional right to be free from being subjected to excessive force by correctional officers at KCCF.

47. With deliberate indifference to the rights of Afanador, Kennebec County encouraged, tolerated, ratified, and/or acquiesced in a dangerous environment of correctional officers using excessive force against inmates by failing to conduct sufficient training, discipline, or supervision; specifically, with regard to Corrections Officer Willhoite.

48. In addition, the use of excessive force was such a widespread custom and practice at KCCF at all times relevant to this Complaint that it had the force of a policy or law.

49. Final policy makers at Kennebec County failed to fire Corrections Office Willhoite after his racist remarks and violence towards inmates was made known.

50. Afanador did not know and had no reason to know that the deliberately indifferent actions and/or omissions and/or customs and practices of Kennebec County were the cause of his injuries and the violations of his Constitutional rights.

51. Afanador was in-fact injured by Kennebec County's deliberate indifference to the violations of his constitutional rights and/or the decisions of final policy makers at Kennebec County.

52. As a result of Kennebec County's actions and/or inactions, Afanador suffered damages, including but not limited to physical injuries, pain, and suffering.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Jonathan Afanador, respectfully prays that this Honorable Court:

53. Enter judgment is his favor awarding compensatory and punitive damages, plus pre-judgment and post-judgment interest;

54. Award him reimbursement costs of suit, including reasonable attorney fees and other litigation costs incurred in bringing this action pursuant to 42 U.S.C. § 1983 or 5 M.R.S. § 4683;

55. Grant such further relief as the Court may deem just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL CLAIMS IN HIS COMPLAINT SO TRIABLE AS OF RIGHT**.

Dated: July 6, 2020

*/s/ Matthew D. Morgan*
MATTHEW D. MORGAN, ESQ.
Bar Number: 5044
Attorney for Plaintiff
McKee Law, LLC, P.A.
133 State Street
Augusta, Maine 04330
 (207) 620-8294
*E-mail*: mmorgan@mckeelawmaine.com